STATE OF MAINE by Indictment,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Kennebec. Opinion December 1, 1885.

*Railroads. Crossing. Negligence.*

In order to entitle a recovery against a railroad corporation on account of an injury, or death, caused by a collision with its train at a crossing, whether the action be in form civil or criminal, it must affirmatively appear :

1. That the defendant corporation was guilty of negligence.

2. That its negligence was the cause of the accident.

3. That the injured party was in the exercise of due care and diligence at the time of the injury, or, at least, that the want of such care on his part in no way contributed to produce it.

It is not enough to show that the defendant was negligent.

It is incumbent on the prosecuting party to go further and, directly or indirectly, by affirmative proof satisfy the jury that no want of due care on the part of the injured party, helped to produce the accident.

It is negligence to attempt to cross the track of a railroad without looking and listening to ascertain if a train is approaching: and ordinary sense, prudence and discretion require this of a traveller so far as he has an opportunity so to do.

It is still greater negligence for one seeing and hearing a train approaching at ordinary speed to attempt to cross directly in front of it.

ON motion to set aside the verdict by the defendant, from the superior court.

The opinion states the case and material facts.

*W. T. Haines*, county attorney, for the state.

There is no similarity in the facts of the case at bar and those shown in *State* v. *M. C. R. R. Co.* 76 Maine 357. In that case, the negligence of the defendant was not made out. In this, it is beyond reasonable controversy. In that case, Dr. Pickard could see the track before he came to it, for a long distance, both ways. In this case, it could not be seen until within ten feet of it. In that case, he could have heard the whistle, had he listened. In this case, no one heard it, until the danger signals were given, and the situation of Benner was such, from the surrounding mills, that he could not hear it. It is not negligence, nor negligence per se, not to stop one's team and then look and listen before going on to a railroad crossing. *Plummer* v. *R. R. Co.* 73 Maine, 591, and in *Kellogg* v. *N. Y. C. & H. R. R. R. Co.* 79 N. Y. 72, the court says: that, " a traveller approaching a railroad crossing is not obliged, as a matter of law, to rise up in his wagon, or to get out and go to the track and make observations. "

In cases of instant death, the best witness of due care and diligence exercised by the person killed, is lost, and it must be one of conjecture, under the circumstances, perhaps, never to be correctly known.

The rule of placing the burden of proof upon the prosecution to free itself from contributory negligence is hard, and when the negligence of the defendant is clearly established, the court will be careful and give the prosecution the full benefit of the facts and circumstances in the case, in coming to the question of contributory negligence.

Slight evidence of due care and diligence of the person killed, in cases of instant death, I understand to be the rule of law, even in those states, where the courts hold that the burden is upon the prosecution to show this.

In cases where contributory negligence is urged, as a defence, that I have examined, great stress is laid upon the fact that the injured party was facing the approaching train. Such is not this case, but the contrary. The age, family, health and occupation of Benner, all argue against his carelessness. Where there is no positive evidence that a person did not look and listen, it will not be presumed that he did not do so. 64 N. Y. 524. The presumption is that the traveller does look and listen, if there is any presumption about it.

The love of life and instinct of preservation will not stand for proof of care, until the contrary appears, yet, under the circumstances in this case, and the facts proved, it seems to me these must go for something. I understand it to be well settled that the circumstances alone may show that there was no contributory negligence of the injured party.

*Leslie C. Cornish*, ( *G. C. Vose* with him,) for the defendant, cited : *Allyn* v. *R. R. Co.* 105 Mass. 77 ; *Hinckley* v. *R. R. Co.* 120 Mass. 257 ; *Gleason* v. *Bremen*, 50 Maine, 222 ; *State* v. *Grand Trunk R'y*, 58 Maine, 176 ; *State* v. *Me. Cen. R. R. Co.* 76 Maine, 358 ; *Cordell* v. *N. Y. C. & H. R. R.* 75 N. Y. 330 ; *Gaynor* v. *O. C. & Newport R'y Co.* 100 Mass. 208 ; *Butterfield* v. *Western R. R. Co.* 10 Allen, 532 ; *R. R. Co.* v. *Houston*, 95 U. S. 697 ; *Grows* v. *Me. Cen. R. R. Co.* 67 Maine, 100 ; *Haas* v. *R. R. Co.* 47 Mich. 401 ; *Chicago & A. R. R. Co.* v. *Jacobs*, 63 Ill. 178 ; *Wilds* v. *Hudson River R. R. Co.* 29 N. Y. 315 ; *Connelly* v. *R. R. Co.* 88 N. Y. 346 ; *Kelley* v. *Hannibal & St. J. R'y Co.* 75 Mo. 138 ; *Daniel* v. *Metropolitan R'y Co.* L. R. 3 C. B. 591 ; *Spencer* v. *Utica R. R. Co.* 5 Barb. 337 ; *Salter* v. *Utica R. R. Co.* 75 N. Y. 273 ; *Central R. R. Co.* v. *Feller*, 84 Pa. St. 226.

FOSTER, J. The indictment in this case is against the Maine Central Railroad Company for negligently causing the death of one Henry McBenner, on the 17th day of June, 1884, at

Greenville street crossing, in the city of Hallowell. About four o'clock in the afternoon of that day, the deceased was passing up Greenville street, seated upon the body of a four wheel empty dump-cart; hauled by one horse, and in attempting to cross the railroad, was struck by the regular afternoon passenger train and nstantly killed. A trial has been had, a verdict of guilty returned by the jury against the railroad, and the case now comes before this court on motion to set aside the verdict as against evidence. And from a careful examination of the case, we have no doubt that the verdict is wrong, and can not be sustained by the evidence, and must, therefore, be set aside.

The principles of law pertaining to actions of this nature have been so recently discussed and laid down by this court in *State* v. *Maine Central Railroad Company*, 76 Maine, 357, and *Lesan* v. *same*, 77 Maine, 85, that it is hardly necessary to recur to them at this time. It is now the established law, not only of this court, but of the highest courts in this country, that in order to entitle a recovery in this class of actions, whether in form civil or criminal, it must be affirmatively shown that the defendants were guilty of negligence, that their negligence was the cause of the accident, and that the injured party was in the exercise of due care and diligence at the time of the injury, or, at least, that the want of such care on his part in no way contributed to produce it. It is not enough to show that the defendants were negligent. That may be true ; and at the same time the injured party may have been negligent, and by such negligence on his part may have contributed to produce the injury complained of. In such case the law affords no redress. It is incumbent on the prosecuting party to go further and, directly or indirectly, by affirmative proof, satisfy the jury that no want of due care on the part of the injured party, who seeks to recover compensation, helped to produce the accident.

Applying these rules of law to the case under consideration, and from an examination of the evidence before us, we do not find the mere want of proof on the part of the prosecution to establish due care, but on the contrary, the evidence overwhelmingly preponderates in affirmatively establishing contributory

negligence, amounting even to sheer recklessness, on the part of the deceased.

This is not a case where evidence is wanting as to the circumstances attending the accident, or the manner in which it happened. It is conclusively shown that the deceased was entirely familiar with the crossing and its surroundings, and had been for six months prior to the accident. Living in the immediate vicinity, he had been accustomed to cross and re-cross the railroad at that point several times each day, and at the time of the accident and for three days prior thereto, he was engaged in hauling dirt from a bank about seventy-five rods west of the crossing to a place about the same distance east of it, and passing over it quite frequently. At the time of the accident, the deceased was riding upon an empty dump-cart fastened to the axle of the hind wheels, the front of which came up to within about three and one-half feet of the forward axle, so that there was a considerable space between himself and the horse he was driving.

The evidence is conclusive and uncontradicted that the whistle was sounded at the regular whistling post, about one hundred rods below the Greenville street crossing, and that the bell was rung continuously from that point to the crossing where the accident occurred and beyond. There were at least three witnesses to the accident, aside from those upon the moving train. Collins, one of the witnesses who was present and within a few feet of the deceased at the time of the accident, and who had walked up from Water street by the side of the team, testifies that Benner had been talking with him all the way up towards the crossing, and when about half way up the hill Benner said "there comes the train," and Collins asked if that was the Augusta train, and he said it was; that he was part of the time leaning over partly looking towards him; and that when he said the train was coming he looked the other way and commenced to pull on the reins of his horse; and when the alarm signals from the engine were given, Collins then being a little in advance of the horse, which was within about four feet of the track, threw up his hands, and Benner stopped two or three seconds, and

then commenced sawing on the reins and said " I guess I can make it, " and drove directly on to the track in front of the advancing train.

The witnesses for the state who saw these parties at the time of the accident, strongly corroborate the testimony of Collins as to the position of the deceased, the situation of the team, and the distance it was from the track at the time the danger signals were given. Blake, one of the witnesses for the state, who was near by at the time, says that when he first saw Benner he was sitting in a stooping position, facing towards the north, apparently talking with the man walking by his side, and when the alarm whistles were given he looked round to the south towards the engine, and then turned back and hallooed "get up" to his horse and began to fish on the reins; he was going very slowly if he was going at all; he was not trotting the horse any way.

The evidence overwhelmingly preponderates in favor of the fact that the deceased was aware of the approach of that train before he drove upon the crossing. It was in broad day light. The horse was one which might with propriety be termed gentle, not afraid of the cars, and going only at a walk. And it is appropriate to say here, as was said by Mr. Justice WALTON, in *State* v. *Maine Central Railroad, supra*: " One in the full possession of his faculties, who undertakes to cross a railroad track at the very moment a train of cars is passing, or when a train is so near that he is not only liable to be, but is in fact, struck by it, is *prima facie*, guilty of negligence; and in the absence of a satisfactory excuse, his negligence must be regarded as established." The evidence offered fails to furnish any satisfactory excuse for the act of the deceased in this case.

It is claimed by the prosecution that there were embankments and other obstacles obstructing the view of approaching trains, and that it was the duty of the railroad company on account of this to exercise greater caution in approaching this crossing. Assuming that such obstacles existed, it may be true; but at the same time such a state of facts, with the knowledge of them such as the deceased must have had, would impose on him a corresponding duty of special caution also.

The established doctrine by the great weight of authority, and by numerous decisions, is, that it is negligence to attempt to cross the track of a railroad without looking and listening to ascertain if a train is approaching, and that ordinary sense, prudence, and discretion require this of a traveller so far as he has an opportunity so to do. If the experiment is made without such precaution, the party acts at his peril, and in the event of an injury received by collision with a passing train, where such precaution is wanting, the traveller must be held to have so far contributed to the catastrophe as to preclude any recovery by him against the company. This precaution is not only reasonable and proper on the part of the traveller for his own safety, but it is equally necessary for the safety of the multitude of passengers upon railroad trains liable to be killed by collision with obstacles, even of an animate nature, upon the track. As remarked by Paxson, J., in *Philadelphia W. & B. Railroad* v. *Stinger*, 78 Pa. St. 219, "The right of a man to risk his own life, and that of his horse may be conceded; but not the right, by an act of negligence, if not of recklessness, to place in peril the lives of hundreds of others who may happen to be travel-ing in a train of cars." Public welfare, as well as private danger to the individual, requires the enforcement of this rule, and consequently courts have been strict and rigid in adhering to it.

But if it is negligence to attempt to cross the track of a railroad without calling into use the senses of seeing and hearing, it is still greater negligence for one seeing and hearing a train approaching at ordinary speed to make such attempt. It is recklessness.

In *Railroad Company* v. *Houston*, 95 U. S. 697, the court hold that if a person using his senses, sees the train coming, and yet undertakes to cross the track instead of waiting for the train to pass, and is thereby injured, the consequences of such mistake and temerity can not be cast upon the company; that no railroad company can be held for a failure of experiments of that kind; and if one chooses in such a position to take risks, he must bear the consequences of failure.

Numerous cases might be cited sustaining like views, but we

do not deem it necessary. From the evidence before us we can arrive at no other conclusion, than that if the deceased did not observe the train before reaching the crossing, it was by reason of his negligence; and if he did observe it, then his proceeding on and attempting to cross in front of the approaching train was an act of gross carelessness, and in either event the verdict can not be sustained.

And if, as claimed by the prosecution, the train at the time was running at a higher rate of speed than six miles an hour, in violation of the statute, it may be conceded that such running would be evidence of negligence on the part of the railroad company, and might subject it to the penalty prescribed by statute. Nevertheless, the plaintiff's case would still fail of being made out unless it appeared that the injury was occasioned by such unauthorized speed of the train, without any direct contributory negligence on the part of the deceased himself. The relation of cause and effect would be wanting. And upon this branch of the case the evidence is absolutely insufficient upon which to found a verdict. By agreement of counsel filed with the case the decision of this court was to make a final disposition of it; therefore the entry must be,

*Motion sustained and verdict set aside.*
*Judgment for defendant.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY, and EMERY, JJ., concurred.